J-A13019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.C.S., MOTHER | : | |
| | : | |
| | : | No. 1045 WDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s):  CP-02-DP-0000348-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: B.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.C.S., MOTHER | : | |
| | : | |
| | : | No. 1046 WDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s):  CP-02-DP-0000270-2023

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                **FILED: June 10, 2024**

L.C.S. ("Mother") appeals from the orders of adjudication and disposition with respect to her sons, J.H., born in August of 2008, and B.H., born in February of 2007 (collectively, "the boys").  We reverse in part.

In May 2023, Mother filed an application to file a private dependency petition and a private dependency petition claiming B.H. was a dependent

child pursuant to 42 Pa.C.S.A. §§ 6302(5)[1] and (6).[2]  Mother alleged B.H. regularly ran away from home, was truant, was on probation, and had stolen items from her home.  *See* Application to File Private Dependency Petition, 5/26/23, at 6.  Subsequently, following a hearing, the hearing officer granted Mother's petition, scheduled an adjudicatory hearing before the trial court, and directed the Allegheny County Office of Children, Youth, and Families ("CYF") to investigate Mother's allegations.

Following its investigation, CYF filed dependency petitions for both B.H. and his younger brother, J.H., alleging the boys were dependent pursuant to 42 Pa.C.S.A. §§ 6302(1)[3], (5), and (6).[4]  The proceedings were delayed multiple times because the boys ran away both from Mother and from CYF placements.  During this period, the police arrested the boys on several

---

[1] 42 Pa.C.S.A. § 6302(5) defines a dependent child as one who, "while subject to compulsory school attendance is habitually and without justification truant from school[.]"

[2] 42 Pa.C.S.A. § 6302(6) defines a dependent child as one who "has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent . . . and who is ungovernable and found to be in need of care, treatment or supervision[.]"

[3] 42 Pa.C.S.A. § 6302(1) defines a dependent child as one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals."

[4] B.H.'s father resides out-of-state and has chosen not to participate in the dependency proceedings and J.H.'s father is deceased.  *See* N.T., 8/9/23, at 3-4.

occasions and filed criminal charges against them.[5] An adjudicatory hearing ultimately took place in August 2023, when J.H. was residing with Mother and B.H.'s whereabouts were unknown.

At the hearing, CYF did not pursue its initial allegation that the boys were dependent pursuant to 42 Pa.C.S.A. § 6302(1). *See* N.T., 8/9/23, at 4-25. CYF caseworker Stephanie Schmidt ("Ms. Schmidt") testified at the hearing. *See id*. Ms. Schmidt discussed ongoing truancy concerns with the boys, and their poor grades, school-related disciplinary problems, drug use, runaway behaviors, and interactions with the police. *See id*. at 6-12, 19. Ms. Schmidt stated Mother had previously suffered "from depression" but "is able to manage it without treatment." *Id*. at 8-9. Ms. Schmidt averred CYF did not "see any evidence of any major concerns with [Mother's] mental health." *Id*. at 9. Ms. Schmidt did not express any concerns about Mother's parenting skills. She stated Mother took appropriate steps to address the boys' behavior, cooperated with both the Probation Department and CYF, sought help from the police and other agencies, and was willing to engage in family counseling. *See id*. at 8-9, 13-15. Ms. Schmidt explained the boys' problem was their unwillingness to cooperate with Mother or service providers. *See id*. Ms. Schmidt additionally noted Mother had a third child in the home, and

---

[5] This Court was unable to determine the disposition of the various criminal charges.

CYF had not filed a dependency petition regarding that child because it had no concerns about Mother's parenting ability. *See id*. at 15-16.

At the conclusion of the hearing, the trial court adjudicated the boys dependent pursuant to 42 Pa.C.S.A. §§ 6302(1), (5), and (6). In addition, the court *sua sponte* ordered Mother to have a mental health evaluation and to "follow all recommendations with regard to treatment." *Id*. at 25. The instant, timely appeal followed.[6]

Mother raises the following issues for our review:

I.     Did the trial court abuse its discretion and/or err as a matter of law by finding that Mother failed to provide appropriate care and control of [the boys] pursuant to 42 Pa.C.S.A. § 6302(1)?

II.    Did the trial court abuse its discretion and/or err as a matter of law by ordering that Mother undergo a [mental health] evaluation when the record did not support concern for Mother's present mental health functioning sufficient to establish the compelling state interest needed to justify the intrusion upon Mother's [c]onstitutionally protected right to privacy?

Mother's Brief at 13 (punctuation, capitalization, and citation format standardized).[7]

---

[6] Mother and the trial court complied with Pa.R.A.P. 1925.

[7] We note CYF did not file a brief or appear at oral argument in this matter. The boys' guardian *ad litem* ("GAL") filed a brief in support of Mother's appeal. *See* GAL's Brief at 6-11.

Mother first contends the trial court erred in adjudicating the boys dependent pursuant to 42 Pa.C.S.A. § 6302(1). *See* Mother's Brief at 26-33.[8]

This Court's standard of review for dependency cases requires that we accept the trial court's finding of facts and credibility determinations when supported by the record. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). The Court is not required to accept the trial court's inferences or conclusions of law and accordingly reviews for an abuse of discretion. *See id*.

A dependency hearing is a two-stage process governed by the Juvenile Act ("the Act"), 42 Pa.C.S.A. §§ 6301-6365. The first stage requires the court to hear evidence on the dependency petition and to determine whether the child is dependent. *See* 42 Pa.C.S.A. § 6341(a). Section 6302(1) defines a "dependent child," in relevant part, as one who is "without proper ***parental*** care or control . . .. ***A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent*** . . . that places the health, safety or welfare of the child at risk. . .." 42 Pa.C.S.A. § 6302(1) (emphases added). A child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available. *See In Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991). Proper parental care

---

[8] Mother does not challenge the adjudications of dependency pursuant to 42 Pa.C.S.A. §§ 6302(5) and (6).

has been defined as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (internal quotation marks and citation omitted). This first stage must be found by "clear and convincing evidence," *i.e.*, testimony that is "so direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." *Matter of C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (internal quotation marks and citation omitted). This Court has emphasized the determination is "very serious, perhaps coloring the child's future attitude toward[,] and relationship with[,] a parent [and accordingly], the court must base its decision on clear and convincing evidence of parental failure to care for the child and whether such care is immediately available." *In re: T.D.*, 553 A.2d 979, 982 (Pa. Super. 1988) (citations omitted).

If the court finds a child is dependent, it proceeds to the second stage of the dependency determination, which requires an appropriate disposition based on the best interest of the child pursuant to 42 Pa.C.S.A. § 6351(a) and (b). *See* 42 Pa.C.S.A. § 6341(c); *see also In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007).

Mother asserts the trial court erred in finding the boys were without proper parental care and control. *See* Mother's Brief at 26-33. Specifically, Mother avers the record established she cooperated with service providers,

attempted everything possible to help the boys, and CYF itself believed the problem that placed the boys at risk was the boys' unwillingness to cooperate with her and service providers, not any deficiency on her part. *See id*.

The trial court stated:

> [r]egarding the court's finding that Mother failed to provide appropriate care and control of [J.H.], the court would note that at the August 9, 2023[,] hearing, [J.H.] was constantly AWOL from Mother's residence. [J.H.] had missed 45 days of school and, as a result, was repeating the ninth grade, all while residing with Mother. Mother had caught both boys using marijuana[] and had suspected the boys of selling marijuana. [J.H.] had been diagnosed with ADHD and in need of medication which he was refusing to take. Both boys had engaged in criminal activity includ[ing] theft, and for [J.H.] there were pending charges of robbery, burglary, firearm possession[,] and violent acts to include recklessly endangering another person and simple assault. CYF was concerned that Mother was not capable of getting either [J.H.] or [B.H.] to follow her rules even though Mother seemed to be doing everything correctly. All of the boys' behavior problems were taking a toll on Mother's mental health. At that point[,] Mother was failing to provide appropriate care and control of [J.H.]. Further, even though [B.H.] was not living at home, he was also truant and repeating the tenth grade. [B.H.] was also committing criminal acts includ[ing] theft, receiving stolen property[,] and drug possession. [B.H.] also had undiagnosed mental health issues.

Trial Court Opinion, 12/24/23, at 4-5 (capitalization standardized).

The trial court's finding that Mother failed to provide appropriate care and control of the boys is not supported by the record. As detailed above, Ms. Schmidt testified repeatedly at the adjudicatory hearing that Mother did everything possible to assist her boys by accessing mental health treatment and services for them, but the boys refused to participate. *See* N.T., 8/9/23, at 14-16. As Ms. Schmidt stated in response to a specific question about

Mother's parenting ability "[t]here are concerns as the boys are not working *with her*. They're not willing to work *with her*. They're not following her rules. So[,] she is struggling with being able to ensure their safety at this time." *Id*. at 13 (emphases added). Ms. Schmidt later clarified Mother had "responded appropriately to the concerns . . . cooperated with probation[,] cooperated with CYF" and sought help from other agencies. *Id*. at 14.

The trial court fails to cite clear and convincing record support for a finding the boys were without proper parental care or control. *See* Trial Court Opinion, 12/24/23, at 4-5. Instead, it infers, without citation to authority, that the boys' misbehavior must be the result of Mother's parental incapacity.[9] *See id*. Further, the trial court's suggestion of Mother's difficulty with her mental health is also unsupported. Ms. Schmidt testified that although Mother reported a prior diagnosis of depression, and was not currently receiving treatment, CYF had no concerns about her current mental health. *See id*. at 8-9. The trial court, unsurprisingly, offers no legal support for the dubious proposition a prior mental health diagnosis, in and of itself, constitutes clear and convincing evidence of parental incapacity. There is, thus, no clear and convincing evidence of parental incapacity. *See T.D.*, 553 A.2d at 983 (holding the trial court erred in finding parental incapacity where child was

---

[9] We note the record demonstrates that CYF had no better success than Mother in managing the boys, who repeatedly ran away from CYF placements. *See* N.T., 8/9/23 at 10-12.

shown to have behavioral problems but there was "precious little evidence" regarding the mother's parenting, and the trial court failed to make "a comprehensive and searching inquiry" into the mother's ability to parent). Thus, we reverse the portion of the trial court's order that adjudicated the boys dependent pursuant to 42 Pa.C.S.A. § 6302(1).

In her second issue, Mother claims the trial court erred in ordering her to undergo a mental health examination. *See* Mother's Brief at 34-38.

With respect to a mental health evaluation in the dependency context, this court has analyzed the issue pursuant to Article 1 Section 1 of the Pennsylvania Constitution, which states:

> **Inherent rights of mankind**
>
> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. Art. 1, § 1. Privacy claims must be balanced against state interests, the right is not absolute or unsusceptible to limitation; an individual may be compelled to disclose private matters where a significant state interest exists and there is no alternate reasonable method of lesser intrusiveness. *See In re: D.S.*, 102 A.3d 486, 489-90 (Pa. Super. 2014).

Mother asserts the trial court's finding she had "not addressed her mental health treatment[,]" N.T., 8/9/23, at 25, lacks record support. Mother's Brief at 35. She maintains that, despite her prior diagnosis of

depression, nothing of record supports a compelled mental health examination or the inference of a history of noncompliance with treatment recommendations. **See id**. at 35-36.

The trial court disagreed, stating:

[the trial c]ourt would note that it was Mother who first revealed her mental health issues to CYF. It is CYF's contention that they did not make a record to support concern for Mother's mental health issues. However, it is evident from the testimony presented at the hearings that Mother is in need of a mental health evaluation both to protect herself and to protect both [J.H.] and [B.H.] and ensure that the best interests of both boys is being properly met and addressed by [the trial c]ourt.

Trial Court Opinion, 12/24/23 at 5.

As discussed above, CYF was aware Mother had previously been diagnosed with depression. **See** N.T., 8/9/23, at 8-9. Ms. Schmidt did not request Mother undergo any mental health evaluation and did not believe Mother needed any current mental health treatment. **See id**. at 9. The record also reflected Mother sought family counseling, but the counselor discontinued the therapy because **the boys** refused to cooperate with counseling. **See id**. at 8.

The trial court does not point to anything of record which demonstrates the state had a compelling interest in ordering Mother to undergo a mental health evaluation. The trial court also does not point to any legal support for its order or discuss the test enunciated in **D.S. See id**. The trial court's decision also fails to discuss any less restrictive alternatives. We thus reverse that portion of the trial court's order that directed Mother to undergo a mental

- 10 -

health evaluation and comply with its recommendations. ***See D.S.***, 102 A.3d at 491-92 (reversing portion of court order directing a father to undergo a psychiatric evaluation and comply with its recommendations where there was no evidentiary support for such an order).

Accordingly, for the reasons discussed above, we reverse those parts of the August 10, 2023, order which adjudicated the boys dependent pursuant to 42 Pa.C.S.A. § 6302(1) and which ordered Mother to undergo a mental health examination and comply with its treatment recommendations.

Order reversed in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 06/10/2024

- 11 -